UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TRI CITY CRAFTS ASSOCIATION,

          Plaintiff,

    v.

AREVA NP, INC,

          Defendant.

NO.  CV-06-5065-EFS

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING AS MOOT
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

    BEFORE THE COURT, without oral argument, are Defendant AREVA NP,
Inc.'s Motion for Summary Judgment (Ct. Rec. 23) and Plaintiff Tri-City
Crafts Association's (TCCA) Motion for Summary Judgment (Ct. Rec. 29).
Both parties ask the Court to determine, if the Court has the authority
to do so, whether a grievance is arbitrable.  After reviewing the
submitted material and applicable case law, the Court is fully informed.
The Court concludes the arbitrator is to determine whether the grievance
is arbitrable; accordingly, Plaintiff's motion is granted in part and
denied in part and Defendant's motion is denied as moot.

///

///

///

ORDER ~ 1

**A.    Factual Statement[1]**

AREVA[2] and TCCA[3] are parties to a collective bargaining agreement (CBA).[4]  (Joint SOF ¶ 1.) The CBA contains a grievance and arbitration procedure, Article 18.1, which provides:

> [i]f a grievance involving the interpretation or application of a provision of this Agreement is not resolved in Step 3 of the grievance procedure, or by discussions pursuant to paragraph 17.5, the Company or the Association may submit the matter to an Arbitration Committee . . . for a decision.

(Joint SOF ¶ 3.)

---

[1]  This background is based on the Joint Statement of Uncontroverted Facts (Ct. Rec. 46).

[2]  AREVA NP has been the owner of the Horn Rapids Road facility since March 19, 2001, when as Framatome ANP, Inc., it acquired the facility as part of a stock purchase from Siemens Power Corp., the parent company of Framatome ANP Richland, Inc. (Joint SOF ¶ 6.) From 1986 to 2001, the facility was owned by Siemens Power Corp. under various legal names including Framatome ANP Richland, Inc. (Joint SOF ¶ 6.)

[3]  TCCA represents a portion of the non-exempt employees at the Horn Rapids Road facility in Richland.  (Joint SOF ¶ 7.)

[4]  Although the collective bargaining agreement is between the TCCA and Framatome ANP, Inc., the employer changed its name to AREVA NP in 2006.  (Joint SOF ¶ 2.) This change had no effect upon the collective bargaining obligations of the parties to the collective bargaining agreement.  (Joint SOF ¶ 2.)

ORDER ~ 2

AREVA and TCCA have a Labor Management process where the parties meet regularly to discuss matters of concern to either party; the process is designed to have open lines of communication. (Joint SOF ¶ 9.) During 2004 and 2005, TCCA suggested that AREVA consider having a Paid Time Off Bank (PTB). (Joint SOF ¶ 10.) The PTB was requested by TCCA to allow employees to better manage their paid time off for personal reasons. (Joint SOF ¶ 10.) Discussions surrounding this issue occurred for a number of months. (Joint SOF ¶ 10.) AREVA saw the potential advantage of the PTB for both parties, including providing employees with a method of managing their time off, to reward employees who effectively managed their time off and to provide a simple, consistent, and well-defined method to administer personal time off in a cost effective manner. (Joint SOF ¶¶ 10 & 11.) TCCA requested bargaining over the PTB plan, but AREVA took the position that Articles VI and XII of the CBA reserve to AREVA the right to make changes to AREVA's policies and the employee benefits programs. (Joint SOF ¶ 12.) Accordingly, AREVA discussed the PTB Guidelines with TCCA, but did not gain its consent, prior to unilaterally instituting the PTB Guidelines effective March 1, 2006.[5] (Joint SOF ¶¶ 12 & 13.) The PTB Guidelines[6] establish an hours

---

[5] The PTB Guidelines were implemented as a pilot program for possible implementation corporate-wide and apply to all production and maintenance employees at the Horn Rapids facility, both union and non-union. (Joint SOF ¶ 14.) At the same time it implemented the PTB Guidelines, the Company implemented a Short Term Disability policy. (Joint SOF ¶ 17.) The Short Term Disability policy is governed by

1  bank for personal time off from work and set out the procedures for using

2  it.  (Joint SOF ¶ 15.)

3      AREVA contends it has the ability under Articles VI and XII to

4  implement the PTB Guidelines without consent of TCCA or submission of the

5  grievance to arbitration.  Article VI of the CBA provides:

6                    ARTICLE VI – COMPANY POLICIES

7      6.1  Company policies, including the following, shall apply to
       Employees during the term of this agreement:

8

| Siemens Corporate Policy Number | Framatome ANP, Inc. Corporate Policy Number | Subject | Date Issued |
|---|---|---|---|
| 8.1.1 | 0210 | NonExempt Overtime | 1/1/02 |
| 8.1.2 | 0218 | Holidays | 1/28/05 |
| 8.13 | 0230 | Working Hours-Overtime Guidelines | 1/1/02 |
| 9.1.4 and 8.2.5 | 0213 | Attendance | 9/15/04 |
| 8.2.2 | 0205 | Employment Categories and Benefits/Compensation Eligibility | 4/12/05 |
| 8.3.1 | 0220 | Educational Assistance Program | 1/31/05 |
| 8.3.2 | 0228 | Vacation | 5/09/05 |

22

23

_____

24  Article XII of the CBA.  (Joint SOF ¶ 17.)

25      [6]  The parties are currently negotiating the terms of the PTB

26  Guidelines in negotiations for a new CBA.  (Joint SOF ¶ 16.)

ORDER ~ 4

6.2  Company policies affecting Employees may be changed from time to time by the Company during the term of this Agreement, provided that:

Such changes are not inconsistent with the provisions of this Agreement; and Such changes do not discriminate against bargaining unit Employees as compared to other employees.

6.3  In the event of an inconsistency between company policies, whether in effects as of the effective date of this Agreement or later adopted or changed, and the provisions of this Agreement, the provisions of this Agreement shall govern.

Later in the CBA, Article 12 provides:

12.1 This agreement does not affect the Company Benefit Program, as it exists or may be expanded, modified or amended; provided, however, that any changes in the Company Benefit Program during the term of this Agreement will not discriminate against Employees as compared to other employees.

12.2  The company Benefit Program includes the following plans:
    a.  Savings and Investment Plan.
    b.  Group Life Insurance Plan.
    c.  Disability Income Plans.
    d.  Retirement Plan.
    e.  Hospital Surgical, Medical Insurance.
    f.  Dental Assistance Plan.

12.3 The Company's interpretation and application of the Company Benefit Program shall be final and binding and neither they nor the substance of the Benefit Program shall be subject to the arbitration procedure of this Agreement, except as to the issue of discriminatory application between Employees and the Company's other wage employees in Richland.

On March 21, 2006, TCCA filed a grievance over the implementation of the PTB Guidelines, alleging a violation of Article 6.1. (Joint SOF ¶ 19.)   The parties processed the grievance, but AREVA repeatedly declared that the grievance was not arbitrable and that it would not submit the grievance to arbitration. (Joint SOF ¶ 20.)  TCCA filed an unfair labor practice charge with the National Labor Relations Board (NLRB) on May 16, 2006.  (Joint SOF ¶ 24.)  The NLRB issued a Complaint and Notice of Hearing before an administrative law judge.  (Joint SOF ¶

ORDER ~ 5

24.)   TCCA filed the current Complaint in federal court on August 24, 2006.   (Joint SOF ¶ 25; Ct. Rec. 1.)   A Board Hearing before an Administrative Law Judge was set for October 24, 2006.   (Joint SOF ¶ 25.) The NLRB then withdrew the Complaint and Notice of Hearing and held the charge in abeyance.   (Joint SOF ¶ 25.)   TCCA has no knowledge of any damages which may have accrued because of the claimed breach of contract. (Joint SOF ¶ 26.)   The reason TCCA pursued this grievance is because AREVA did not bargain over the PTB issue, so it is a question of process rather than economic impact. (Joint SOF ¶ 26.)

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).   The party seeking summary judgment must demonstrate there is an absence of disputed issues of material fact to be entitled to judgment as a matter of law. FED. R. CIV. PROC. 56(c).   In other words, the moving party has the burden of showing no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Lynn v. Sheet Metal Worker's Intern. Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982)).   The court is to view the facts and draw inferences in the manner most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999).

A burden is also on the party opposing summary judgment to provide

ORDER ~ 6

sufficient evidence supporting his claims to establish a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 252; *Chaffin*, 186 F.3d at 1213. "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252).

**C.  Authority and Analysis**

TCCA filed this action seeking a court order requiring arbitration of the PTB grievance on the grounds that (1) it is the arbitrator's role to determine whether the grievance is arbitrable, or in the alternative (2) the Court should determine arbitrability and then order AREVA to submit the grievance to arbitration.  In its own motion and in response to TCCA's motion, AREVA asks the Court to conclude that the CBA does not apply to the instant grievance given that AREVA retained the authority to revise the company policies affecting benefit programs in Articles VI and XII.

Section 301 of Labor Management Relations Act authorizes suits for violations of collective bargaining agreements between an employer and a labor organization.  29 U.S.C. § 185.  The Supreme Court has analyzed arbitration issues a number of times, including a series of cases known as the *Steelworkers Trilogy*:  *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).  The first principle from this *Trilogy* is "arbitration

ORDER ~ 7

is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *Warrior & Gulf Navigation*, 363 U.S. at 582).  The second principle is:

> the question of arbitrability-whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance-is undeniably an issue for judicial determination.  Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

*Id.* at 649.  The third principle is, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.*  In the absence of relevant extrinsic evidence, matters of contract interpretation are decided by the court as a matter of law. *Council of Laborers v. Pittsburgh-Des Moines Steel*, 69 F.3d 1034, 1036 (9th Cir. 1995).

The parties agree they are subject to the CBA and that "[t]he collective bargaining agreement states the rights and duties of the parties." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960).  Yet, the parties are unable to agree as to the application of the second and third *Steelworker Trilogy* principles, *i.e.* whether the instant dispute is subject to the terms of the CBA, and initially whether it is the Court's or arbitrator's role to determine whether the CBA does apply to the dispute.

As set forth above, the second prong of the *Steelworkers Trilogy* provides that a court is divested of the authority to determine whether

ORDER ~ 8

the agreement requires the dispute to be subject to arbitration if the parties "clearly and unmistakably provide" that an arbitrator is to decide whether the dispute is subject to arbitration. *S. Cal. Dist. Council of Laborers v. Berry Const, Inc.*, 984 F.2d 340, 344 (9th Cir. 1993) (quoting *AT & T Techs.*, 475 U.S. at 649). The Ninth Circuit has:

> acknowledged that the CBA explicitly may grant this authority to the arbitrator. But we have also held that the <u>power to determine arbitrability may be granted [to the arbitrator] through the use of a broad arbitration clause</u>. For example, in *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.*, 832 F.2d 507 (9th Cir. 1987), we held that an arbitration clause governing "any grievance or controversy affecting the mutual relations" of the parties empowered the arbitrator to decide whether the CBA had been terminated. Conversely, we have held that an arbitration clause which applied only to disputes over "application" of the CBA was limited to disputes over the construction of substantive provisions of the agreement, and did not empower an arbitrator to decide whether the factual question of whether the agreement had been terminated. *Northern California Newspaper Guild Local 52 v. Sacramento Union*, 856 F.2d 1381, 1383 (9th Cir. 1988).

*S. Cal. Dist. Council of Laborers*, 984 F.2d at 344 (underlining added).

Here, CBA ¶ 18.1 provides:

> If a grievance involving the interpretation or application of a provision of this Agreement is not resolved in Step 3 of the grievance procedure, or by discussions pursuant to paragraph 17.5, the Company or the Association may submit the matter to an Arbitration Committee (as described below) for a decision.

The Court concludes the parties selected broad arbitration language and finds ¶ 18.1 provides the arbitrator with the authority to determine whether the PTB dispute is subject to arbitration. *See S. Cal. Dist. Council of Laborers*, 984 F.2d at 341 & 344 (finding that arbitrator was given the authority to determine arbitrability of dispute by broad language: "all grievances or disputes arising between [the parties] over the interpretation or application of the terms of this Agreement shall

ORDER ~ 9

be settled by the procedures set forth in Article VI."); *United Bhd. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310-11 (9th Cir. 1996) ("A broad arbitration clause-even one that does not specifically mention *who* decides arbitrability-is sufficient to grant the arbitrator authority to decide his or her own jurisdiction."). Accordingly, although "[i]t is [generally] the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances . . . ," *AT & T Techs.*, 475 U.S. at 651, the Court finds the parties selected to have an arbitrator, not a court, determine whether a particular issue is arbitrable. Therefore, an arbitrator is to determine whether or not the PTB grievance is arbitrable. Lastly, the Court declines to award TCCA attorneys fees.

For the above given reasons, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 29)** is **GRANTED IN PART** (an arbitrator is to determine whether or not the PTB grievance is arbitrable) **and DENIED IN PART** (attorneys fees request denied).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 23)** is **DENIED AS MOOT.**

**IT IS SO ORDERED.** The District Court Executive is directed to

(A)  Enter this Order,

(B)  Provide copies to all counsel,

(C) Prepare and enter **JUDGMENT** (an arbitrator is to determine whether or not the PTB grievance is arbitrable), and

///

///

///

ORDER ~ 10

1    (D) **CLOSE THIS FILE,** subject to reopening if necessary due to

2 arbitrator's decision.

3    **DATED** this ___14th___ day of August 2007.

4

5                              s/ Edward F. Shea
                              EDWARD F. SHEA
6                      United States District Judge

7 Q:\Civil\2006\5065.cba.frm

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 11